IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 1:03-cr-00031-MP-AK

ROY L. MCDUFFIE,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Doc. 45, Motion to Vacate under 28 U.S.C. § 2255, by

Roy L. McDuffie.  The Government has filed a reply, Doc. 49, and Defendant has filed a motion

to invalidate his armed career offender sentence and a motion to supplement, Docs. 54 & 51,

which have been referred to the undersigned for consideration.  Doc. 55.  Defendant has also

filed a second motion to supplement the record with newly discovered evidence and a motion for

discovery.  Docs. 56 & 57.  This cause appears to be in a posture for consideration.  Having

carefully considered the matter, the Court recommends that the motion to vacate and all other

outstanding motions be denied.

## BACKGROUND

        Defendant was indicted for possession of a firearm by a prior convicted felon and for

possession with intent to distribute marijuana.  Doc. 1.  The felonies underlying the firearm

count were listed as follows:  (1) 1969 conviction for attempted breaking and entering, (2) 1970

conviction for attempted auto larceny, (3) 1971 conviction for escape, (4) 1977 conviction for

breaking and entering to commit a felony and grand larceny, (5) 1981 conviction for carrying a

concealed firearm, (6) 1985 conviction for grand theft of a motor vehicle, and (7) 1985

conviction for sexual battery.  *Id*.  Defendant was specifically charged as an armed career

criminal.  *Id*.; *see also* 18 U.S.C. § 924(e)(1) (where defendant indicted for unlawful firearms

possession "has three previous convictions...for a violent felony or a serious drug offense, or

both, committed on occasions different from one another," defendant shall be imprisoned not

less than 15 years).

Subsequently, Defendant's attorney, Tom Miller, filed a motion to suppress "all physical

items and/or written statements of the defendant from evidence."  Doc. 12.  More specifically,

Defendant attacked the supporting affidavit (1) for failing to "establish that the alleged

controlled substance (marijuana) was in fact field or laboratory tested to verify that the

controlled substance was marijuana," and (2) for failing to "establish or present to

the...magistrate any veracity, credibility, or reliability of the unnamed 'confidential informant'"

or the information provided to the state court judge.  *Id*.

The Court conducted a hearing on the motion and found:

The affidavit in support of the state-issued service warrant best described as "bare
bones" did set forth the basic necessary information, I believe, to support the
application as set forth.

The undercover operation of this defendant began by the Dixie County Sheriff's
Office in March of 2003 based upon a complaint received and also information
received from an individual who later turned out to be a CI.  They may have both
been the same, I don't know, but they used a confidential informant to make a
controlled purchase of marijuana from the defendant.  They surveilled the
operation as best they could, kept it under actual contact.  The buy itself was
recorded.  Although we don't have a copy of the recording here today, we were
advised there is one in the possession of the sheriff.  Field test for the marijuana
was positive.  It was sent to the FDLE lab, the final results not yet in; that the
sheriff's office continued to monitor the defendant's home, noted high volume of
traffic at the residence consistent with people going to make drug buys, in the
opinion of the investigator, the last surveillance being approximately one week
prior to the execution of the warrant.  I find that the information was not stale.  It
provided sufficient information upon which the magistrate could and did issue a

warrant; and further, that the good faith exception under Leon and reasonable
reliance as a warrant by the officer has been established, if the warrant itself was
not proper, which I do find it to be.  Motion to suppress is denied in all respects.

Doc. 31 at 28-30.  Immediately thereafter, Defendant entered a guilty plea to each count.  *Id*. at

30-48.  In the Factual Basis, which was incorporated into the Plea Agreement, Defendant

acknowledged that his "prior convictions qualify him for treatment as an armed career criminal."

Doc. 23 at 5.  Before accepting Defendant's pleas, the Court placed him under oath and made a

series of inquiries to determine whether his "decision to plead guilty is freely and voluntarily

made and that there is a factual basis to support that guilty plea...."  *Id*. at 31-32.  In particular,

the Court advised Defendant:

> It may also be, Mr. McDuffie, that you have some defense to this charge.  Now I
> don't know that you have any defense and I am not telling you that you have any
> defense.  What  I am telling you, though, is if your guilty plea is accepted by the
> Court this afternoon, that you then waive, that is you give up any defense
> whatsoever that you may have.

*Id*. at 36.  Defendant advised the Court that even "knowing [he was] giving up any defense that

[he] may have by pleading guilty," he still wished to plead guilty.  *Id*.  The Court then reviewed

the charges against him and the "essential elements" of each "to which the government must

offer proof...."  *Id*. at 37.  Defendant agreed that the facts recited by the Government, including

Defendant's post-Miranda admission to law enforcement that he "was keeping the firearm for a

friend," were "true and correct."  *Id*. at 38-39.  Defendant then acknowledged that he understood

that he faced "a maximum of life imprisonment with a mandatory minimum of 15 years

imprisonment" on Count I.  *Id*. at 39.

A Presentence Report (PSR) was prepared which determined Defendant's total offense

level to be 31, based in part on Defendant's status as an armed career criminal.  Presentence

Report at ¶ 20. Defendant's Guidelines range was 188 to 235 months imprisonment. PSR at ¶ 92. Defendant did not file any objections to the PSR. *Id*. at ¶¶ 105 & 107. Thereafter, the Court sentenced Defendant to 188 months imprisonment on Count I and 60 months imprisonment on Count II, to run concurrently. Doc. 32 at 4; *see also* Doc. 27.

Defendant appealed, and on appeal, he was represented by Gwendolyn Spivey. The only issue on appeal was the legal sufficiency of the search warrant affidavit. Doc. 44. The Eleventh Circuit rejected Defendant's arguments, finding (1) that although the supporting affidavit "did not provide much detail, it was sufficient to establish probable cause," (2) that the "information [in the affidavit] was fresh enough to support probable cause," and (3) that if the affidavit was insufficient, "the officer relied upon the warrant in good faith." *Id*. at 4-6. According to the motion and the Government, the appellate court subsequently denied Defendant's motion to recall the mandate pursuant to *Blakely*. Doc. 45 at 3; Doc. 49 at 3.

The instant motion to vacate ensued. Doc. 45. In his motion, Defendant raises four claims for relief: (1) "Illegally forced entry, Illegally seized evidence," (2) "Forum shopping and selective prosecution by state and federal agents and by the prosecutor," (3) "Defective Indictment," and (4) "McDuffie did not enter a knowingly, voluntary, intelligent, and competent guilty plea." *Id*. at 5-6. In the supporting memorandum, he adds three additional claims: (1) "Abuse of Discretion by the Court That Led to Plain Error," (2) "Prosecutorial Misconduct, and Outrageous Conduct by the Assistant U.S. Attorney," and (3) "Constitutionally Ineffective Assistance of Counsel at All Stages." Doc. 45, Mem. at 23-30. Each will be considered in turn.

**DISCUSSION**

I.      Motion to vacate.

1.       "Illegally forced entry, Illegally seized evidence."

In this claim, Defendant charges that law enforcement failed to knock and announce before entering his home to execute the search warrant.  Doc. 45, Mem. at 9.  He further claims that officers violated the search warrant by seizing the firearm which was not within the scope of the warrant and not within plain view.  *Id*. at 11-12.  These issues were not raised in the motion to suppress or on appeal.

When Defendant pled guilty, he waived all non-jurisdictional defenses he might have had to the charges against him, including any claim that the execution of the warrant and the attendant seizure were unconstitutional, as long as his plea was knowing and voluntary.[1] *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979).  As will be discussed more fully *infra*, Defendant's plea was knowing and voluntary, and thus, the instant claim is not cognizable in this proceeding.

2.       "Forum shopping and selective prosecution by state and federal agents and by the prosecutor."

In this claim, Defendant argues that this Court lacked subject matter jurisdiction over him and that only the State of Florida had the right to prosecute him.  In his view, the decision by the federal government to prosecute him was done selectively and vindictively only to secure a greater punishment.

This Court plainly acted within its subject matter jurisdiction in this case, as it has original jurisdiction of "all offenses against the laws of the United States."  18 U.S.C. § 3231.

---

[1]The Fourth Amendment claim related to the sufficiency of the search warrant, unlike the instant claim which was never brought before the Court for consideration, was preserved for appeal.

Additionally, "defects in an indictment do not deprive a court of its power to adjudicate." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "[I]llegal possession and sale of drugs affects interstate commerce, and Congress accordingly has authority under the Commerce Clause to criminalize and punish drug-related activity." *United States v. Jackson*, 111 F.3d 101, 102 (11th Cir. 1997). Furthermore, the statute criminalizing possession of a firearm by a prior convicted felon has consistently been upheld as constitutional. *United States v. Wright*, 392 F.3d 1269, 1280 (11th Cir. 2004), *cert. denied*, 544 U.S. 968 (2005).

Defendant's claim of selective and vindictive prosecution is equally without merit. "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). The prosecutor's discretion is not, however, unfettered, as it is subject to constitutional constraints, *Wayte*, 470 U.S. at 609, and thus, the decision to prosecute may not be based "upon an unjustifiable standard such as  race, religion, or other arbitrary classification." *Bordenkircher*, 434 U.S. at 364 (internal quotation and citation omitted).

Defendant can point to no "unjustifiable standard" underlying the Government's decision to prosecute the instant federal offenses. Furthermore, in deciding to prosecute, the Government can be "influenced by the penalties available upon conviction" without violating either the Equal Protection or Due Process Clause. *United States v. Batchelder*, 442 U.S. 114, 125 (1979). Indeed, it is very likely that the Government could have prosecuted Defendant for the instant

offenses even if the State had prosecuted him first for the same acts underlying the instant

indictment.  *Abbate v. United States*, 359 U.S. 187, 194 (1959).

       3.      "Defective Indictment."

       In this claim, Defendant charges that the indictment was defective because it did not

"serve proper notice to protect him" from double jeopardy as it did not allege drug quantity, the

Court lacked subject matter jurisdiction over the charges, and the Government engaged in

prosecutorial misconduct.  The last two reasons have been rejected *supra* and will not be

considered again.  As to Defendant's double jeopardy argument, it is without merit.  An

indictment need only contain a "plain, concise, and definite written statement of the essential

facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  In other words, it must present the

essential elements of the charged offense, notify the defendant of the charges to be defended

against, and enable him to rely upon a judgment under the indictment as a bar against double

jeopardy for any subsequent prosecution for the same offense.  *United States v. Walker*, 490 F.3d

1282, 1296 (11th Cir. 2007).

       The instant indictment charged Defendant with possessing with intent to distribute less

than 50 kilograms of marijuana on or about April 1, 2003.  Although the indictment did not

specifically set the drug quantity, it cited to the relevant statutes--21 U.S.C. § 841(a)(1), making

it a crime to "possess with intent to...distribute a controlled substance," and 21 U.S.C. §

841(b)(1)(D), setting the maximum penalty for possession with intent to distribute less than 50

kilograms of marijuana–tracked the language of the charging statute, and stated a date certain on

which the alleged possession with intent to distribute occurred.  This is plainly sufficient for

purposes of the Double Jeopardy Clause.

To the extent that Defendant raises an *Apprendi* argument to the indictment, it too is without merit, as he admitted during the plea colloquy the possession of three pounds of marijuana, which was sufficient to trigger the maximum 5-year sentence under the statute.

4.      "McDuffie did not enter a knowing[ ], voluntary, intelligent, and competent guilty plea."

In this claim, Defendant maintains that he "did not understand what he was pleading guilty to, or the nature or the elements of the charged offense, nor the punishment that would be applied to his sentence prior to him entering a plea of guilty...."  He also charges that the Court "failed to place him under oath and question him about his understanding of what constitutional rights he would be waiving...or what the punishment was to be applied to him."

The law is well established that a "guilty plea means something.   It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court."  *Murray v. United States*, 145 F.3d 1249,  1254 (11ᵗʰ Cir. 1998).  In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*,  431 U.S. 63, 73-74 (1977).

Defendant's allegations are "contentions that in the face of the record are wholly incredible."  The Court plainly placed Defendant under oath before advising him of his constitutional rights, the charges against him, the elements of those charges, and the attendant penalties.  The Court probed his understanding of each of these matters and satisfied itself that Defendant understood the waiver of constitutional rights which he was effecting with the change

of plea.  This claim is patently without merit.

> 5.    "Abuse of Discretion by the Court That Led to Plain Error."

This claim is merely a rehashing of the previous four claims and is equally meritless, warranting no further discussion.

> 6.    "Prosecutorial Misconduct, and Outrageous Conduct by the Assistant U.S. Attorney."

This claim also reiterates arguments previously raised and rejected.  No further discussion is warranted.

> 7.    "Constitutionally Ineffective Assistance of Counsel at All Stages."

Because Defendant's final claim involves ineffective assistance of counsel, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at

689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no

competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*,

257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "An ambiguous or silent record is not

sufficient to disprove the strong and continuing presumption...that [counsel] did what he should

have done and that he exercised reasonable professional judgment."  *Chandler v. United States*,

218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The

relevant question is not whether counsel's choices were strategic, but whether they were

reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for

determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would

interfere with counsel's independence–which is also constitutionally protected–and would

restrict the wide latitude counsel have in making tactical decisions."  *Putnam v. Head*, 268 F.3d

1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to

divine the layer's mental processes underlying the strategy."  *Chandler*, 218 F.3d at 1315 n.16.

"No lawyer can be expected to have considered all of the ways [to provide effective assistance]."

*Id*.  Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable
> courses of defense (that the lawyer did not think of at all) existed and that the
> lawyer's pursuit of course A was not a deliberate choice between course A,
> course B, and so on.  The lawyer's strategy was course A.  And [the Court's]
> inquiry is limited to whether this strategy, that is, course A, might have been a
> reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable

conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*,

466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A

"reasonable probability is defined as a probability sufficient to undermine confidence in the

outcome." *Id*.  Additionally, prejudice is established only with a showing that the result of the

proceeding was fundamentally unfair or unreliable.  *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions

set forth above, "the cases in which habeas petitioners can properly prevail...are few and far

between."  *Chandler*, 218 F.3d at 1313 (11th Cir. 2000).  This is because the test is not what the

best lawyers would have done or even what most good lawyers would have done, but rather

whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.

*Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

In this claim, Defendant charges that counsel acted ineffectively when he failed to object

(1) to the forced entry into his home, (2) "to the illegally seized weapon...that was not named in

the search warrant," (3) to the referral of this matter for federal prosecution, (4) to the defective

indictment, (5) to prosecutorial misconduct, and (6) to the Court's plain error.

Grounds (3) through (6) have previously been rejected on their merits and thus cannot

form the bases for an ineffective assistance of counsel claim.  As to Ground (2), though the

warrant was limited to a search for drugs and drug paraphernalia and related bookkeeping items,

the search could be as "extensive as reasonably necessary as required to locate the items

described in the warrant."  *United States v. Jackson*, 120 F.3d 1226, 1228 (11th Cir. 1997).

Looking under a bed for the items described is not unreasonable, and thus, the seizure of a

weapon from that location was proper under *Jackson*, where the court found that the seizure of a

weapon from a closed closet during the course of a drug search was lawful.  *Id*. at 1229.

As to Ground (1), the Court does not find that counsel rendered ineffective assistance by failing to move to suppress the evidence based on the officer's alleged failure to knock and announce before entering Defendant's home.  According to the officer's report, she and another officer "went to the front door [and] could hear people inside the door talking."  Doc. 12, Ex. 2. She then "turned the knob finding it unlocked, opened the door and announced Sheriff's Department."  *Id*.

In *Wilson v. Arkansas*, 514 U.S. 927 (1995), the United States Supreme Court held that "in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment."  *Wilson*, 514 U.S. at 934.  In *Wilson*, police "found the main door to [defendant's] home open.  While opening an unlocked screen door and entering the residence, they identified themselves as police officers and stated that they had a warrant."  *Id*. at 930.  The Court declined to require "that every entry must be preceded by an announcement," since a "rigid rule of announcement...ignores countervailing law enforcement interests," *id*. at 934, such as where there is a "threat of physical violence" or there is "reason to believe that evidence would likely be destroyed if advance notice were given," *id*. at 936, but reversed the defendant's drug convictions and remanded for the state court to consider whether there was "necessary justification for the unannounced entry in this case."  *Id*. at 937.  It did not rule on the issue of whether "exclusion [of the seized evidence] is...a constitutionally compelled remedy where the unreasonableness of a search stems from the failure of announcement."  *Id*. at 937 n.4.

Later, in *Richards v. Wisconsin*, 520 U.S 385 (1997), the Supreme Court considered the law of knock and announce and found:  "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular

circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards*, 520 U.S. at 394. In rejecting a "blanket exception to the knock-and-announce requirement for felony drug investigations," *id*. at 396, the Court recognized that the "showing [to justify a no-knock entry] is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Id*. at 395-96.

In *United States v. Ramirez*, 523 U.S. 65 (1998), the Court reiterated the rule announced in *Richards* that a "no-knock entry is justified if police have a 'reasonable suspicion' that knocking and announcing would be dangerous, futile, or destructive to the purposes of the investigation." *Ramirez*, 523 U.S. at 71. Like it had in *Wilson*, the Court left open the question of whether suppression of the seized firearms was warranted. *Id*. at 72 n.3.

Thus, at the time of the search in this case, counsel knew that all the police had to say was that they heard voices inside Defendant's residence and that they had a "reasonable suspicion" that knocking and announcing before entering the residence would have been "dangerous, futile, or destructive to the purposes of the investigation," a "showing [which was] not high." Even if counsel could have convinced the Court that the officer's action in opening the door before announcing her presence violated the knock and announce rule, exclusion of the evidence found at the residence was not automatic, as Defendant seems to believe. Since Defendant's conviction, the Court has answered the question left open in *Wilson* and *Ramirez* and found that "[r]esort to the massive remedy of suppressing evidence of guilt is unjustified" for a knock and announce violation. *Hudson v. Michigan*, _____ U.S. _____, 126 S.Ct. 2159, 2168, 165 L.Ed.2d 56, (2006). In reaching that conclusion, the Court relied on three cases which

predated Defendant's arrest, including *Ramirez*, finding in it a "clear[ ] expression" that "an

impermissible manner of entry does not necessarily trigger the exclusionary rule[.]"  *Hudson*,

126 S.Ct. at 2170; *see also New York v. Harris*, 495 U.S. 14 (1990) (though warrantless arrest

made at defendant's home was illegal, subsequent incriminating statements made by him at

police station were legal and admissible);  *Segura v. United States*, 468 U.S. 796 (1984) (though

entry into apartment was illegal, search pursuant to warrant subsequently obtained was legal, and

resulting evidence was not excludable).

      Under the authorities cited in *Hudson*, there is not a reasonable probability that the Court

would have excluded the evidence seized at Defendant's home even if counsel had moved to

suppress the evidence for a knock and announce violation.

      Defendant also argues that counsel was ineffective for failing "to negotiate a favorable

plea agreement...that would have resulted in him receiving a lesser sentence," to keep him

informed of the "legal developing issues in his case," to advise him of the consequences of a

guilty plea or "what his sentence would be prior to him entering a plea of guilty," and to prepare

for trial.

      By pleading guilty, Defendant received the benefit of a three-point reduction for

acceptance of responsibility; otherwise, he would have faced a Guidelines sentence of 262-327

months.  He thus received substantial benefit by pleading guilty and accepting responsibility for

his actions.  Given his extensive criminal history and his admissions to that history, Defendant

always faced a minimum mandatory sentence of 180 months, and counsel could do nothing to

change that result, for without a motion for downward departure from the Government, the Court

was bound to that statutory penalty.

Defendant's claim that counsel failed to keep him informed of the "legal developing issues" is vague and thus not actionable.  Even if counsel failed to advise Defendant of the consequences of the plea or the extent of his sentence, he was not prejudiced thereby since the Court plainly advised him of those matters.  Finally, there was no trial in this case, and thus, counsel did not need to prepare for it.

Finally, Defendant complains that appellate counsel acted deficiently in failing to raise these errors or to argue ineffective assistance of trial counsel on appeal.  As none of Defendant's claims has merit, none of them had to be raised on appeal, as appellate counsel is not required to raise frivolous, non-meritorious arguments.

II.    Other outstanding motions.

As noted in the introduction, Defendant has filed a motion to invalidate his armed career offender sentence and motions to supplement and for discovery.  These motions were referred to the undersigned "to determine how best to incorporate these new claims into Defendant's pending § 2255 motion."  Doc. 55.

In Defendant's motion to invalidate his designation and sentencing as an armed career criminal, Defendant concedes that the 1985 conviction for sexual battery was properly counted towards the three predicate violent crime felonies necessary for sentencing as an armed career criminal.  He claims, however, that none of the other offenses listed in the Indictment meet the criteria under § 924(e)(1).  As previously noted, Defendant admitted in the Factual Basis, which was incorporated into the Plea Agreement, that his "prior convictions qualify him for treatment as an armed career criminal."  Doc. 23 at 5.  The Court will nevertheless examine Defendant's other convictions to determine whether he had two additional convictions for violent felonies

which were "punishable by imprisonment for a term exceeding one year."  18 U.S.C. §

924(e)(2)(B).

In 1981, Defendant was convicted of carrying a concealed firearm.  PSR at ¶ 44.  Though

he pled *nolo contendere*, he was obviously adjudicated guilty of that offense, as he was

sentenced to four years imprisonment.  *Id.*  While this conviction may have been too old to be

scored under the Guidelines, *see generally* U.S.S.G. Manual at ch. 4, pt. A, there is no similar

temporal restriction in § 924(e)(1).  *United States v. Green*, 904 F.2d 654, 655 (1990).

Furthermore, Defendant, who only vaguely states that this "charge cannot be used as a

predicate," cannot seriously dispute that carrying a concealed weapon is a crime "that presents a

serious potential risk of physical injury to another..." 18 U.S.C. § 924(e)(2)(B)(ii).  There is no

requirement under the statute that physical injury actually occurred, only a "serious potential

risk" that physical injury occur.  It was thus properly considered in determining Defendant's

status as an armed career criminal.

Finally, Defendant was convicted of grand theft of a motor vehicle.  PSR at ¶ 45.

According to the PSR, Defendant stole the vehicle from an individual before abandoning it some

time and distance later.  *Id.*  He argues generally that this "charge cannot be used as a predicate,"

but he does not explain that argument.  Be that as it may, the Court believes that it too qualifies

as a violent felony, as the "[t]heft of a vehicle presents a likelihood of confrontation" with "a

returning driver or passenger, a passerby, or a police officer, any of whom may be intent on

stopping the crime in progress," and the "encounter between the thief and such a person carries a

serious risk of violent confrontation."  *United States v. Sun Bear*, 307 F.3d 747, 752-53 (8th Cir.

2002).

Although not charged in the Indictment, Defendant has a fourth conviction which indisputably constituted a violent felony under § 924(e), i.e., Defendant's 2001 conviction for possession of a firearm by a convicted felon.  PSR at ¶ 48; *see also* Fla. Stat. Ann. § 790.23 (possession of firearm by prior convicted felon is second degree felony); Fla. Stat. Ann. 775.082 (second degree felony punishable by term of imprisonment not exceeding 15 years).

Defendant's motion to invalidate his armed career criminal offender sentence should therefore be denied.  Because the Court did not rely on the information presented in the motions to supplement, Docs. 51 & 56, they should be denied as moot.

The Court turns finally to Defendant's motion for discovery, Doc. 57, in which he seeks production of the tape recording of the confidential informant, the buy money given to the confidential informant, and the lab report verifying the drugs as marijuana.  These are all matters which cannot form the basis of any collateral attack in this proceeding, and thus, their discovery is not appropriate.  Defendant pled guilty to the charges in the Indictment, and thus, any defense which might have been predicated on any of these matters before plea was waived with the guilty pleas.

**CONCLUSION**

Having carefully considered the matter, the Court finds no merit to any of Defendant's claims presented in his motion to vacate or other outstanding motions.  In light of the foregoing, it is respectfully **RECOMMENDED**:

That Defendant's motion to vacate, Doc. 45, be **DENIED**;

That the motion to invalidate armed career criminal offender sentence, Doc. 54, be **DENIED**;

That the motion s to supplement, Docs. 51 & 56, be **DENIED AS MOOT**;

That the motion for discovery, Doc. 57, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this _**4**_*th*_day of September, 2007.


_**s/ A. KORNBLUM**_
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**